**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| CHANGE LENDING, LLC, a California limited liability company, | Case No. |
| Plaintiffs, | |
| v. | COMPLAINT |
| CHAMPIONS FUNDING, LLC, a Florida limited liability company; DENIS GARVAN KELLY, an individual; and DOES 1 through 50 inclusive, | |
| Defendants. | |

**COMPLAINT**

Plaintiff CHANGE LENDING, LLC, a California limited liability company, sues Defendants CHAMPIONS FUNDING, LLC, a Florida limited liability company, DENIS GARVAN KELLY, an individual, and DOES 1 through 50, and alleges as follows:

**THE PARTIES**

1.      Plaintiff, CHANGE LENDING, LLC (hereinafter "Change Lending" or "Plaintiff") is, and at all relevant times referenced herein was, a limited liability company formed and existing under the laws of the State of California, with its principal place of business located at 16845 Von Karman Avenue, Suite 200, Irvine, California 92606.

2.      Plaintiff is informed and believes, and based thereon alleges, that Defendant CHAMPIONS FUNDING, LLC (hereinafter "Champions Funding") is a Florida limited liability company, formed on or about March 6, 2013 with the filing of its Articles of Organization with the

Florida Secretary of State, as entity number L13000034676.  Plaintiff is further informed and believes, and based thereon alleges, that Champions Funding's principal place of business is located at 6767 N. Wickham Road, Melbourne, Florida.  At all relevant times hereto, Champions Funding was, and is, in the business as a mortgage broker, providing loan and lending services to consumers.

3.  Defendant DENIS GARVAN KELLY (hereinafter "Kelly") is, and at all material times hereto was, an individual believed to be residing in Miami Beach, Florida, and a former employee of Change Lending.  Change Lending and Kelly shall be collectively referred to at times as "Defendants."

4.  The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiff.  Plaintiff, therefore, sues these Defendants by such fictitious names and will seek leave of Court to amend its Complaint to show their true names and capacities when the same have been ascertained.

5.  Plaintiff is informed and believes, and based thereon alleges, that the Defendants, and each of them, including those alleged herein fictitiously, are the agents co-venturers, joint venturers, co-conspirators, employees or representatives of the other Defendants, and in acting in the manner alleged herein did so with the knowledge, ratification and consent of the other Defendants, and acted in concert with them.  Plaintiff is further informed and believes, and based thereon alleges, that each of the Defendants named herein engaged in wrongful conduct that is a cause of Plaintiff's damages, and were co-conspirators of the others, acting within the course and scope of such conspiracy.

## VENUE AND JURISDICTION

6.  This Court has subject matter jurisdiction over state law claims under 28 U.S.C. § 1332(a) because the parties are citizens of different states, and the controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Plaintiff is a resident of, or its formation and principal place of business is in the State of California, and Defendants are residents or domiciled in the State of Florida.

7.  This Court has personal jurisdiction over the individual defendants insofar as the

individual defendants reside in, and are residents of, this jurisdiction.

8.     Venue is proper in this Court under 28 U.S.C. § 1391(b) insofar as the Defendants reside or have their principal place of business in this jurisdiction and venue, and a substantial part of the events giving rise to this action occurred within this venue and jurisdiction.

## COMMON ALLEGATIONS

### A.     Change Lending.

9.     Change Lending is a national leader and provider in real estate and home mortgage financing.  The company originates home loans and provides residential lending and business services in a highly competitive market in which lenders compete fiercely with one another. Change Lending relies heavily on the specialized training, skills, and knowledge of its employees, particularly those who have received extensive training from Change Lending, have been with Change Lending for some time, are top producers, have demonstrated commitment, reliability and loyalty, served in management roles, and/or are otherwise key to Change Lending's operation and success.

10.     Over  the years, through trial and error and the investment of substantial time and effort, Change Lending created its business model, including its underwriting, marketing, internal forms and procedures, organization and business structure, and business plan, all in order to design its mortgage business to secure a competitive edge.  The manner in which Change Lending conducted its business, and created its internal structure and business materials, reflects significant effort on the part of Change Lending.

11.     In addition, Change Lending provides training to its employees and direction in the ever emerging and changing mortgage lending process.  Change Lending's business practices, and the structuring and operating of it business, were intended to streamline and enhance the business, and to formulate underwriting and other business criteria to benefit its business model and plan.

12.     The value of Change Lending's employees cannot be  adequately quantified.  The

skills and knowledge of Change Lending's employees are what make Change Lending a national leader in the home mortgage financing industry.

13.     Because of the value of well-trained, experienced, and knowledgeable employees, Change Lending has collected and maintained, at considerable expense and time, information about its employees including, without limitation, information regarding the training, skill levels, capabilities, and production levels of its employees, as well as information concerning salaries, compensation, and bonuses received by its employees.  Change Lending takes every precaution to preserve, protect, and maintain the confidentiality of that information (hereinafter referred to as "Confidential Employee Information") to secure its proprietary interests and to protect the employees' privacy interest as mandated by law.

14.     Change Lending is engaged in residential home lending in a highly competitive market in which other mortgage lenders compete intensely for customers.  Because the number of potential customers is limited as compared to the abundance of mortgage lenders and loan officers, the identity of existing and potential customers and borrowers is a critical and primary source of business for mortgage lenders and loan officers like Change Lending.  Therefore, once Change Lending makes contact with a potential customer, through an existing relationship, general marketing, or a referral stream, Change Lending takes every precaution to preserve and maintain the confidentiality of that information to protect the customer's privacy interests and Change Lending's proprietary rights.

15.     To compile contact information regarding customers and potential customers, Change Lending uses various marketing tools; maintains the confidentiality of the information; and devotes other valuable resources to the creation and maintenance of customer contact information.  Accordingly, the identity of Change Lending's borrowers, customers, and those persons who have been identified by Change Lending as potential customers are central to Change Lending's continuing operations. Such information represents the core proprietary, confidential, and trade secret information maintained by Change Lending and its employees.

16.     For example, Change Lending maintains contact information for all individuals who have been contacted or identified in relation to the provision of home mortgage lending

services.  This information regarding the identity of potential customers, their private financial information, circumstances surrounding these potential borrowers, as well as other information necessary to evaluate their overall credit-worthiness constitutes valuable trade secrets of Change Lending.

17.     Change Lending's home mortgage lending program information is also valuable because it details the types of financial products that Change Lending offers.

18.     Change Lending has further invested significant time and funds, over many years, in developing various formulas, compilations, techniques, methods, and processes used by Change Lending to evaluate and make loans and extensions of credit.

19.     The foregoing information relating to customer lists and information, leads, files, pending loan applications, existing loan files, loan program information, formulas, and business plans and marketing strategies are all critical aspects of Change Lending's business that are not available to the public and are maintained in strict confidence as possible within Change Lending's offices and electronic databases (hereinafter referred to as "Confidential Customer Information").

20.     Change Lending's Confidential Employee Information and Confidential Customer Information (collectively referred to as "Confidential Information") derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

21.     At all relevant times of this lawsuit, Change Lending has undertaken, and does undertake, reasonable efforts to maintain the confidentiality and secrecy of its Confidential Information.  At all relevant times of this lawsuit, Change Lending has been, and is, maintaining its Confidential Information in a secure manner at Change Lending's physical and electronic facilities, in a manner that will minimize opportunities for disclosure to unauthorized persons, including storage of documentation in files that are not available to persons other than Change Lending employees with a legitimate business reason for access thereto, and the use of passwords and other security measures to maintain confidentiality and security of electronically stored information.

22.     In order to protect Change Lending's proprietary and confidential information,

every employee and company officer and representative was, and is, required to review and execute various Change Lending documents and agreements. Such documents and agreements specifically require individuals, like Kelly, to covenant and agree to the terms and conditions of his employment, including non-solicitation, non-compete and confidentiality provisions. No employee is hired, like Kelly, unless they acknowledge the proprietary nature of the materials and information they receive, and agree to maintain such documents and information in strict confidence. Any employee, like Kelly, also covenants and agrees to refrain from certain specific conduct.

23.     In April, 2021, Kelly sought employment with Change Lending. Kelly touted himself as having significant experience in developing accounts and loan production, as well as managing others in various aspects of the business. Based upon his application, and representations of experience, on April 2, 2021, Change Lending, f/k/a Commerce Home Mortgage, offered Kelly a position as Senior Vice-President, in the Wholesale Division of the company. In connection with such position, Kelly was offered a very substantial and lucrative compensation package, which the company believed was representative of his experience, based upon Kelly's stated background. Kelly accepted the position, signing the offer of employment of April 2, 2021.

24.     Kelly then commenced his employment with Change Lending on or about April 19, 2021, as Senior Vice-President, in the Wholesale Division. Upon hire, Kelly was provided with various confidentiality agreements to review and approve, which he executed. One such document signed by Kelly was a Confidentiality and Non-Disclosure Agreement, a true and correct copy of which is attached hereto as Exhibit "A." The Confidentiality Agreement precluded Kelly's unauthorized use of Change Lending's Confidential Information in certain circumstances.

25.     After only two short months, Change Lending determined that Kelly was unwilling and/or unable to perform the essential job duties of the Senior Vice President. On or about June 14, 2021, Kelly and Change Lending mutually agreed that Kelly would step down from his then

current role, and into a role of Regional Vice President – Wholesale, working out of Miami, Florida.  He would be responsible for a team of employees in the Miami area.  As a result of the change in job position with Change Lending, Kelly agreed to a different compensation plan, including a base salary and incentive compensation.

26.     In October 2021, and in connection with Kelly's continued employment, in order to maintain his employment with Change Lending, Kelly was presented with, read and executed Change Lending's Wholesale Regional Sales Manager Employment Agreement ("Employment Agreement"), a copy of which is attached hereto as Exhibit "B."  As relevant, the Employment Agreement specifically provided, by example, as follows:

> Return of Company Property. All loans initiated and handled by Employee while employed by Company, and all related information, shall at all times remain the sole and exclusive property of Company. Employee agrees to promptly return to Company immediately upon request, at any time, and immediately upon termination of employment, all Company property, including without limitation, cell phones, office keys, access cards, any electronic communications equipment issued by the Company, documents, files, correspondence and notes, containing or relating to Confidential Material (defined below), and including but not limited to information obtained from the customers and prospective customers contacted by Employee, and the loans handled by Employee while employed by Company, without keeping any copies. . . .

> 14.1 (a) **Protected Information**

> Confidentiality. Employee hereby acknowledges, understands and agrees that all "Confidential Material," as defined below, is the exclusive and confidential property of Company which shall at all times be regarded, treated and protected as such in accordance with this Article IV. Employee acknowledges that all such Confidential Material is a trade secret. For purposes of this Agreement, "Confidential Material" means information, which is available to or used in the business of Employee and (i) is proprietary to, about or created by Company, (ii) gives Company a competitive business advantage or the opportunity of obtaining such advantage or the disclosure of which would be detrimental to the interests of Company, or (iii) is designated as Confidential Material by Company, is known by Employee to be considered confidential by Company, or from all the relevant circumstances should reasonably be assumed by Employee to be confidential and proprietary to Company. . . .

27.     The Employment Agreement also included a Non-Disclosure provision, whereby Kelly covenanted and agreed that he occupied a position of trust and confidence with respect to the affairs of Change Lending, and that he would not disclose Change Lending's Confidential Materials, other than in carrying out the business of Change Lending.  (Exhibit B, Section 14.1(b)(ii)).

28.     Kelly contractually agreed that he would not "use, copy or transfer Confidential Material other than as necessary in carrying out the business of" Change Lending.

29.     Moreover, Kelly covenanted and agreed that for twelve (12) months after the cessation of his employment, he would not "directly or indirectly, separately or in association with others, interfere, disrupt or damage Company's business by soliciting, recruiting, attempting to recruit, or causing or assisting in the recruitment or attempted recruitment of, any then-current employee of Company, or any individual who has served in any such capacity, or as an exclusive independent contractor or exclusive consultant of the Company, at any time within the six (6)-month period immediately prior thereto, for employment with another person or entity."  (Exhibit B, Section 14.2(a)).

30.     Finally, Kelly also agreed not to take any action which "damages, impairs, or interferes with Company's contractual and/or economic relationships with any business, vendor, officer, director, agent, employee, contractor, or other person or entity."  (Exhibit B, Section 14.2(c)).

31.     In short, acknowledging his duty of loyalty to Change Lending, pursuant to the Employment Agreement and other applicable laws, Kelly agreed not to interfere with Change Lending's business by soliciting, recruiting, or hiring employees of Change Lending to work with another person or entity.

32.     By the very nature of his position and tenure with Change Lending, Kelly acquired and had access to Change Lending's Confidential Information.  Indeed, Kelly held a managerial role during his employment with Change Lending, and therefore had an intimate understanding of Change Lending's loan program information, business development and strategies,

underwriting process, marketing, loan pricing and business plan.

33.     At some point in the end of 2021 or the beginning of 2022, Change Lending is informed and believes, and based thereon alleges, that Kelly decided that he was going to leave the employment of Change Lending, and discussed with Defendant Champions Funding, a competitor of Change Lending, his desire to leave Change Lending and commence employment with Champions Funding.  Change Lending is further informed and believes, and based thereon alleges, that in the course of such discussions, Kelly informed Champions Funding that he could remove and/or convey Change Lending's proprietary and confidential information, including its forms, business  plan, marketing strategy, and internal operations, and deliver it to Champions Funding.

34.     Change Lending is further informed and believes, and based thereon alleges, that Kelly informed Champions Funding that he could raid Change Lending's employee base, and bring Change Lending's entire workforce in Change Lending's Miami, Florida office, to Champions Funding to work the same lending programs, with Change Lending's underwriting criteria, for Champions Funding.  Kelly referred to the workforce as "The Solutions Team."  Kelly was aware that The Solutions Team was acutely aware of Change Lending's business practices and Confidential Information.

35.     Change Lending believes that Champions Funding agreed to Kelly's proposal, offering him a position with Champions Funding, and conspiring with Kelly to receive the fruits and benefits of Change Lending's hard labor, taking its employees and Confidential Information in order to compete against Change Lending.

36.     Between February 10, 2022 and February 11, 2022, the entire Solutions Team, consisting of eight (8) employees and Kelly, or in other words the entire Miami, Florida office for Change Lending, tendered their resignation to Kelly, who they reported to, and Kelly passed such termination notices along to Change Lending.  Each employee tendered their resignation between February 10, 2022 and February 11, 2022.  For example, one such departing employee from the "Solutions Team" informed Change Lending that he was leaving because he "received a great

offer with another outfit…"  All individuals tendered their resignation effective "immediately."

37.     Kelly then proceeded to tender his own resignation.  Such resignation was also effective immediately.  In all, Kelly orchestrated a mass exodus from Change Lending between February 10, 2022 and February 11, 2022.  Change Lending is informed and believes, and based thereon alleges, that all such employees were recruited by Kelly to leave Change Lending, and thereafter commenced employment with Champions Funding, and notwithstanding the terms of Kelly's Employment Agreement and confidentiality agreements.

38.     Change Lending is informed and believes, and based thereon alleges, at some point before or after leaving Change Lending, Kelly and Champions Funding began to solicit and seek the placement of loans directly in competition with Change Lending, and using Change Lending's confidential and proprietary information.  To that end, for instance, Champions Funding copied Change Lending's underwriting guidelines, almost verbatim, publishing them on Champions Fundings' website.  Champions Funding has targeted Change Lending's business, using Change Lending's employees and confidential information to compete against it.

39.     Notably, Kelly set up of a competing business, made use of Change Lending's business plan, confidential documents, key personnel and other employees, and internal forms and documents.  Defendants obtained the critical benefit of time and know-how, which gave them a significant advantage in the market, and enabled them to take advantage of Change Lending's efforts.

40.     As a direct result of Defendants' wrongful solicitation of Change Lending's employees and customers and potential customers, and use of Change Lending's materials, Change Lending has been injured and will continue to be injured, has suffered and will continue to suffer harm, and has incurred additional consequential damages.  All of these losses are ongoing.

41.     As a direct result of Defendants' misappropriation of Change Lending's Confidential Information for Champion Fundings' benefit, Change Lending has been irreparably harmed as it has lost valuable proprietary information, in addition to the competitive advantage

such information provided.

42.     Defendants, and each of them, have benefited from their improper activities by realizing revenue and profits that belong to Change Lending.  As a result, Change Lending may lose customers, transactions, revenue, and additional employees, all of which is ongoing and in excess of $75,000, but according to proof at trial.

**FIRST CAUSE OF ACTION**

**BREACH OF WRITTEN CONTRACT**

**(Against Kelly and DOES 1 through 20)**

43.     Change Lending re-alleges and incorporates by this reference each and every foregoing paragraphs, of this Complaint, paragraph 1 through 42, inclusive, as though fully set forth in full.

44.     In April 2021, and in order to secure employment with Change Lending, Kelly entered into a Confidentiality and Non-Disclosure Agreement, a true and correct copy of which is attached hereto as Exhibit "A."

45.     Thereafter, in October 2021, Kelly entered into a Wholesale Regional Sales Manager Employment Agreement ("Employment Agreement"), a copy of which is attached hereto as Exhibit "B."  The Employment Agreement was entered into in connection with Kelly's continued employment with Change Lending, and in regards to Kelly's position as Regional Sale Manager with Change Lending.

46.     Under the terms of the Non-Disclosure Agreement, and thereafter Employment Agreement, Kelly agreed not to disclose Confidential Information he obtained during the course of his employment with Change Lending.  He also agreed not to interfere with Change Lending's business by soliciting, recruiting, or hiring employees of Change Lending to work with another person or entity.  (Employment Agreement, Sections 14.1(a), 14.1(b)(ii), 14.2(a)).

47.      Kelly also agreed not to take any action which "damages, impairs, or interferes with Company's contractual and/or economic relationships with any business, vendor, officer, director, agent, employee, contractor, or other person or entity."  (Employment Agreement,

Section 14.2(c)).

48.     Change Lending performed all conditions, covenants, and promises required of it under the terms and conditions of Agreement, except for those promises, conditions, and covenants excused by the acts and omissions of Kelly as herein described.

49.     Beginning in or about February 2022, and perhaps earlier, Kelly breached his obligation under the Employment Agreement with Change Lending by misappropriating, using, and/or disclosing Change Lending's Confidential Information, providing such Confidential Information to Change Lending's competitor, Champions Funding, and soliciting Change Lending's employees, enticing such employees to terminate their employment relationship with Change Lending, and otherwise doing the things alleged hereinabove.

50.     Following Kelly's conduct, eight employees, or the entire Miami, Florida office of Change Lending, terminated their employment relationship with Change Lending, and commenced employment at Champions Fundings.  Furthermore, Change Lending is informed and believes, and based thereon alleges, that Kelly took Change Lending's Confidential Information and provided it to Champions Funding in order to compete against Change Lending, utilizing Change Lending's Confidential Information to market, sell and offer loans and lending services to consumers.  Champions Funding went so far as to copy, almost verbatim, Change Lending's marketing, sales and underwriting materials.

51.     As a direct and proximate result of Kelly's breaches of the Agreement, Change Lending has been damaged in an amount to be proven at trial, but in excess of $75,000, and according to proof at trial.

52.     Kelly's breaches of the Non-Disclosure Agreement and Employment Agreement have caused and continue to cause Change Lending irreparable injury and cannot be fully redressed through damages alone.  An injunction prohibiting Kelly from further breaching the Non-Disclosure Agreement and Employment Agreement, from further using or disclosing Change Lending's Confidential Information, and requiring him to return Change Lending's Confidential Information, is necessary to provide Change Lending with complete relief.

## SECOND CAUSE OF ACTION

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Kelly and DOES 1 through 20)

53.     Change Lending re-alleges and incorporates by this reference each and every foregoing paragraphs, of this Complaint, paragraph 1 through 52, inclusive, as though fully set forth in full.

54.     Inherent in virtually every contract is the covenant of good faith and fair dealing. Under Florida law, there is an implied promise of good faith and fair dealing that exists, such that neither party to a contract will do anything to unfairly interfere with the right of the other part to the contract or to receive its benefits.

55.     The requirements of the covenant of good faith and fair dealing is to protect the reasonable expectations of the contracting party.

56.     Here, Kelly was obligated to act in good faith, and deal fairly with Change Lending with respect to the terms and conditions of the Non-Disclosure agreement and Employment Agreement, entered into between the parties in April 2021 and October 2021.

57.     Change Lending did all, of substantially all, of the significant things that the agreements required of it, except as otherwise excused by Kelly and/or his actions.

58.     Any and all conditions necessary for Kelly's performance had occurred.

59.     Kelly, however, breached the terms, conditions, and covenants of the agreements, and the covenant of good faith and fair dealing, by: (a) disclosing Change Lending's Confidential Information to Champions Funding; (b) targeting, soliciting, and enticing Change Lending's work force to terminate their employment and join Champions Funding, to compete against Change Lending; and (c) seeking to damage, impair, or interfere with Change Lending's relationships with its business, agent, and employees.

60.     Kelly, by his conduct, breached the covenant of good faith and fair dealing.  Change Lending had a reasonable contractual expectation that Kelly would adhere to the terms of the parties' agreements, and would not target Change Lending's business, seek to secure its workforce, and use Change Lending's Confidential Information to compete against it.

61.     As a direct and proximate result of Kelly's breaches of the Agreement, Change Lending has been damaged in an amount to be proven at trial, but in excess of $75,000, and accordingly to proof at trial.

62.     Kelly's breaches of the Non-Disclosure Agreement and Employment Agreement have caused and continue to cause Change Lending irreparable injury and cannot be fully redressed through damages alone.   An injunction prohibiting Kelly from further breaching the Non-Disclosure Agreement and Employment Agreement, from further using or disclosing Change Lending's Confidential Information, and requiring him to return Change Lending's Confidential Information, is necessary to provide Change Lending with complete relief.

## THIRD CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

#### (Against Kelly and DOES 1 through 20)

63.     Change Lending re-alleges and incorporates by this reference each and every foregoing paragraphs, of this Complaint, paragraph 1 through 62, inclusive, as though fully set forth in full.

64.     From April 2021 through February 11, 2022, Kelly had maintained a fiduciary obligation to Change Lending.  Kelly recognized and agreed that based upon his intended receipt of Confidential Information, that he occupied a position of trust and confidence with respect to the affairs and business of Change Lending.

65.     Such duty included the obligation not to divulge, share or use Change Lending's Confidential Information to compete against it, or otherwise use such information for another competitor.

66.     Kelly had a fiduciary duty of trust and loyalty to Change Lending,  as its employer. Such fiduciary duty existed during the course and scope of Kelly's employment with Change Lending.

67.     During the term, and while employed by, Change Lending, beginning in 2021, and continuing to February 11, 2022, Kelly breached his fiduciary duties to Change Lending by

providing Change Lending's Confidential Information to Champions Funding, using Change Lending's Confidential Information to compete against Change Lending, and by soliciting, enticing and causing Change Lending's employees to terminate their employment relationship, all while employed by Change Lending.

68.     Such conduct constitutes a breach of fiduciary duty, and therefore subjects Kelly to liability for his conduct as alleged herein.  Such conduct was intended to dispute, impair, interfere, and damage Change Lending's business.

69.     As a direct and proximate result of Kelly's breaches of fiduciary duties, Change Lending has been damaged in an amount to be proven at trial, but in excess of $75,000, and according to proof at trial.

70.     The aforementioned acts of Kelly were oppressive, malicious, and fraudulent, thereby justifying an award of punitive damages in an amount sufficient to punish Kelly and to deter future conduct of this type.

## FOURTH CAUSE OF ACTION

### BREACH OF DUTY OF LOYALTY

### (Against Kelly and DOES 1 through 20)

71.     Change Lending re-alleges and incorporates by this reference each and every foregoing paragraphs, of this Complaint, paragraph 1 through 70, inclusive, as though fully set forth in full.

72.     From April 2021 through February 11, 2022, Kelly owed a duty of loyalty to Change Lending prohibiting him from carrying on a rival business during his employment or engaging in disloyal acts in anticipation of future competition.  Kelly accepted this duty of loyalty by accepting employment with Change Lending.

73.     Such duty included the obligation not to divulge, share or use Change Lending's Confidential Information to compete against it, or otherwise use such information for another competitor.

74.     During the term, and while employed by Change Lending, beginning in 2021, and

continuing to February 11, 2022, Kelly breached his duty of loyalty to Change Lending by providing Change Lending's Confidential Information to Champions Funding, using Change Lending's Confidential Information to compete against Change Lending, and by soliciting, enticing and causing Change Lending's employees to terminate their employment relationship, all while employed by Change Lending.

75.     Such conduct constitutes a breach of loyalty, and therefore subjects Kelly to liability for his conduct as alleged herein.  Such conduct was intended to dispute, impair, interfere, and damage Change Lending's business.

76.     As a direct and proximate result of Kelly's breaches of his duty of loyalty, Change Lending has been damaged in an amount to be proven at trial, but in excess of $75,000, and according to proof at trial.

77.     The aforementioned acts of Kelly were oppressive, malicious, and fraudulent, thereby justifying an award of punitive damages in an amount sufficient to punish Kelly and to deter future conduct of this type.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH CONTRACT
### (Against Champions Funding and DOES 25 through 50)

78.     Change Lending re-alleges and incorporates by this reference each and every foregoing paragraphs, of this Complaint, paragraph 1 through 77, inclusive, as though fully set forth in full.

79.     At all relevant times to this lawsuit, an employment relationship existed between Change Lending and Kelly, as well as between Change Lending and its employees, that contained the probability of future economic benefit to Change Lending.

80.     Change Lending is informed and believes, and based thereon alleges, that Champions Funding knew, and was aware, of the contractual relationship between Change Lending and its employees, including as it relates to Change Lending's Confidential Information.

81.     Despite the knowledge of the terms and conditions of the contractual relationship

between Change Lending and its employees, Champions Funding nevertheless targeted Change Lending's business to obtain its Confidential Information, and secure its employee workforce, which Change Lending devoted time, effort and resources to train.

82.     Because of Champions Funding's conduct and its improper solicitation of Kelly and Change Lending's eight other employees, that employment relationship between such employees and Change Lending ended, and Change Lending lost all future economic benefit from it.  But for the conduct of Champions Funding, that employment relationship would have continued and Change Lending would have continued to receive economic benefit from that employment relationship.

83.     Change Lending is informed and believes, and based upon such information and belief alleges, that Champions Funding solicited Change Lending's employees, and enticed them to leave Change Lending in a group exodus, at the same date and time, and offered them employment with Champions Funding.

84.     Change Lending is informed and believes, and based upon such information and belief alleges, that Champions Funding intended to disrupt Change Lending's employment relationship with its employees, or knew that disruption of performance was certain or substantially certain to occur.

85.     As a direct result of Champions Funding's conduct, Kelly and eleven other employees resigned from employment with Change Lending.

86.     As a direct and proximate result of Champions Funding's conduct, Change Lending has suffered damages in an amount to be proven at trial, but in excess of $75,000.

87.     The aforementioned acts of Champions Funding were oppressive, malicious, and fraudulent, thereby justifying an award of punitive damages in an amount sufficient to punish Champions Funding and to deter future conduct of this type.

## SIXTH CAUSE OF ACTION

## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### (Against All Defendants and DOES 20-50)

88.     Change Lending re-alleges and incorporates by this reference each and every

foregoing paragraphs, of this Complaint, paragraph 1 through 87, inclusive, as though fully set forth in full.

89.     Florida's Deceptive and Unfair Trade Practices Act is intended to protect consumers and legitimate businesses from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or proacted in the conduct of any trade.  An unfair practice includes acts which are immoral, unethical, oppressive, unscrupulous or is substantially injurious.

90.     By the wrongful conduct of the Defendants herein, including but not limited to misappropriation of Change Lending's Confidential Information, using Change Lending's misappropriated Confidential Information, and solicitation of Change Lending's employees, including breaches of employment relationships, such conduct constitutes unlawful, unfair, and fraudulent business acts and practices under  the Florida statutes.

91.     As a direct and proximate result of Defendants' unfair trade practices and competition, Change Lending has suffered injury and harm, and will continue to suffer injury and harm, unless Defendants are enjoined from the conduct alleged in this Complaint.

92.     Change Lending requests that the Court issue temporary, preliminary, and permanent injunctive relief against Defendants.  Unless Defendants are restrained, they will continue to injure Change Lending's business.  Change Lending has no adequate remedy at law for the injuries currently being suffered in that Defendants continue to engage in unfair competition.

93.     In addition, Change Lending seeks the assessment of a civil penalty, pursuant to Section 501.2075 of the Florida Statute, and  reasonable attorney's fees incurred herein.

94.     As a direct and proximate result of Champions Funding's conduct, Change Lending has suffered damages in an amount to be proven at trial, but in excess of $75,000.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

<u>**AS TO THE FIRST AND SECOND CAUSES OF ACTION**</u>

1.      For damages in excess of $75,000, but according to proof at trial;

<u>**AS TO THE THIRD AND FOURTH CAUSE OF ACTION**</u>

1.      For damages in excess of $75,000, but according to proof at trial;

2.      For an award of exemplary damages;

<u>**AS TO THE FIFTH CAUSE OF ACTION**</u>

1.      For damages in excess of $75,000, but according to proof at trial;

2.      For an award of exemplary damages;

<u>**AS TO THE SIXTH CAUSE OF ACTION**</u>

1.      For damages in an amount to be proven at trial, plus interest thereon at the legal rate until paid in full, in excess of $75,000, but according to proof at trial;

2.      For a civil penalty;

3.      For its reasonable attorney's fees;

4.      For a temporary restraining order, a preliminary injunction, and a permanent injunction, all requiring Defendants, and each of them: (i) to refrain from using or disclosing Change Lending's Confidential Information; (ii) to refrain from unlawfully soliciting Change Lending's employees and/or interfering with their employment relationships with Change Lending; and (iii) to return all materials constituting or embodying Change Lending's Confidential Information.

## <u>AS TO ALL CAUSES OF ACTION</u>

1.      Court costs incurred herein, including reasonable attorney's fees;

2.      For such other and further relief as the court may deem proper.


Date:  May 16, 2022                        LEVINE KELLOGG LEHMAN
                                           SCHNEIDER + GROSSMAN LLP
                                           *Counsel for Plaintiff*
                                           201 S. Biscayne Blvd., 22nd Floor
                                           Miami, Florida 33131-4301
                                           (305) 403-8788 Main
                                           (305) 403-8789 Facsimile

                                           By: /s/ Thomas R. Lehman, P.A.
                                           THOMAS R. LEHMAN, P.A.
                                           Florida Bar No. 351318
                                           Primary: trl@lklsg.com
                                           Secondary: ph@lklsg.com
                                           MARCELO DIAZ-CORTES
                                           Florida Bar No. 118166
                                           Primary: md@lklsg.com
                                           Secondary: jhd@lklsg.com

                                           ECOFF CAMPAIN TILLES & KAY, LLP

                                           By: /s/ Lawrence C. Ecoff
                                               Lawrence C. Ecoff, Esq. (pro hac vice)
                                               Alberto J. Campain, Esq. (pro hac vice)
                                               280 S. Beverly Drive, Suite 504
                                               Beverly Hills, California 90212
                                               (310) 887-1850
                                               Email: ecoff@ecofflaw.com

                                           Counsel for Plaintiff

## REQUEST FOR JURY TRIAL

Pursuant to the Federal Rules of Civil Procedure and Local Rules, Plaintiff demands a trial by jury of all claims so triable.

Date:   May 16, 2022

LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
*Counsel for Plaintiff*
201 S. Biscayne Blvd., 22nd Floor
Miami, Florida 33131-4301
(305) 403-8788 Main
(305) 403-8789 Facsimile

By: /s/ Thomas R. Lehman, P.A.
THOMAS R. LEHMAN, P.A.
Florida Bar No. 351318
Primary: trl@lklsg.com
Secondary: ph@lklsg.com

MARCELO DIAZ-CORTES
Florida Bar No. 118166
Primary: md@lklsg.com
Secondary: jhd@lklsg.com

ECOFF CAMPAIN TILLES & KAY, LLP

By: /s/ Lawrence C. Ecoff
    Lawrence C. Ecoff, Esq. (pro hac vice)
    Alberto J. Campain, Esq. (pro hac vice)
    280 S. Beverly Drive, Suite 504
    Beverly Hills, California 90212
    (310) 887-1850
    Email: ecoff@ecofflaw.com

Counsel for Plaintiff